I try to give you as much time as necessary in order to make your arguments. I'm Justice Sharon O. Johnson and I am joined by my colleagues Justice Michael Hyman and Justice Carl A. Walker. You'll each be given 20 minutes in which to make your argument with the appellant having the appearance for the record. Yes, good afternoon, Your Honors. My name is Gilbert Lenz and I'm here on behalf of Antonio Smith. Okay, and how much time would you like to reserve for rebuttal? Five minutes should be sufficient, Your Honor. Thank you. Okay, very well. Appellees Council, please state your appearance for the record. Good afternoon, Assistant States Attorney Lisanne Pugliese appearing on behalf of the people. Thank you very much. You may begin, Attorney Lenz. Thank you very much, Your Honor, and good afternoon to the Court and Council. Again, Gilbert Lenz from the Office of the State Appellate Defender on behalf of Antonio Smith. Your Honors, the question before the Court is whether Mr. Smith's pro se post-conviction petition states an arguable claim that his counsel on direct appeal was ineffective for failing to raise an excessive sentence claim. Because Smith's pro se pleadings sufficiently state that claim and because that underlying claim has arguable merit, this Court should remand for second stage proceedings on Smith's post-conviction petition. But you agree, Mr. Lenz, that counsel is not required to raise every single issue even if they're non-meritorious issues. Yes, Your Honor, I agree with that. In this case, and as the case law indicates, where the reviewing court finds that a claim that was not raised on direct appeal but could have been had arguable merit, then no strategic reason, it's at least arguable that no reasonable strategy supported the decision to omit that claim. And that is sufficient for to meet the first stage standard to warrant further proceedings. Would you agree that the judge, I think judge stated that this sentence was on the low end? The judge stated that, I believe, at the motion to reconsider sentence stage. But that, the only way, this was the maximum sentence, of course, so the only way the judge... Well, it wasn't maximum because it's, he could have done it consecutively, right? Yes, exactly, Your Honor. It's not the maximum. Right, it's the maximum concurrent sentence. That's correct. But in finding that consecutive sentences weren't warranted, the judge made a finding that the consecutive sentences weren't necessary to protect the public. So inherent in that finding, his post-sentencing remarks don't change that finding, and inherent in that finding is a finding that Mr. Smith is not so utterly irredeemable that it's reasonable to sentence him to the most serious sentence in Illinois, which is a sentence of natural life in prison. And that is what the ultimate sentence amounted to. And that sentence... You're saying that because the sentence will take him to age 69? Yes, that's several years past the average life expectancy for a prisoner in Illinois, especially someone who will have been in for over 40 years. So I don't think there's any reasonable reading of the record other than this is a de facto sentence of natural life. How do you respond to the argument that people are living longer now? Can you repeat that, Your Honor? I'm sorry? In the news recently, you've heard by people to die at age 100. I'm sorry, I didn't catch that, Your Honor. Yes, recently in the news, we've had like three or four people to recently die at age 100. So you're saying just because it's age 69 that it's a life sentence? It is for a prisoner, Your Honor. I believe many studies have shown that the average life expectancy for a prisoner is in the mid-60s. And I think that expectancy decreases the longer someone's in. So the Illinois Supreme Court for an 18-year-old has declared that a sentence of 40 years or more is a de facto sentence of natural life. So this is not a juvenile case, of course, but the logical extension of that is that a 50-year sentence at 85% for a 29-year-old is a de facto sentence of natural life. And again, that's... It's about 40 years. He was 29. And if you had 40 years, that would be 69, which is... It's right on the border when you take the pleading is on the border at any point. This is a first stage pro se post-conviction petition, and borderline questions should be advanced to the second stage. But the judge found that he was dangerous. How are we supposed to do with that? I mean, his reasoning was twofold, right, from what he said. He said the defendant was dangerous and he does not have much rehabilitative potential. Those are the two reasons he gave. What's your reaction to both of them? Well, on both of those points, to take the latter, by saying that he does not have much rehabilitative potential, that's different from saying he has no rehabilitative potential. And this court well knows that judges will say that when that's their finding. So he's not saying... He was not saying that Mr. Smith is utterly irredeemable. Not much is still some rehabilitative potential. And on the point about dangerousness, there's no question, the facts are undisputed, Your Honors, that this was a very serious offense. But I would emphasize to the court that while Mr. Smith was dangerous in committing these offenses, this was a four-day period in his 29-year life where this was the only four-day period in the record that we know where he exhibited a violence of this nature, from the moment of the kidnapping to the moment he bit the officer's finger after his arrest. That's a four-day period in this man's life. And as dangerous as he was, as the conduct that was proven showed him to be during those four days, I think the judge even found, by not saying that he was utterly irredeemable, the judge acknowledged some of the mitigating evidence. I mean, this is not a record that shows this is a person who's so dangerous that he needs to be condemned to die in prison. That's the only reasonable sentence. So it's at least arguable that had counsel raised this claim on direct appeal, this court would have reduced this sentence or remanded for a new sentencing hearing. And if this court agrees with that... Well, but wouldn't it really have been asking the court, which is something that the state has argued that the appellate counsel has been asking us to re-weigh what the judge did, which we can't do. It's not a matter of re-weighing, Your Honors. It's a matter of finding whether the judge's decision was an abuse of discretion in light of the record. It's a fine line. I agree, Your Honor, that between re-weighing the factors versus determining whether the judge abused his discretion. But in this case, where the judge did not find that Mr. Smith was so utterly irredeemable, did not find that consecutive sentences were necessary to protect the public, his sentence, his de facto sense of natural life shows that he did not keep Mr. Smith's and that's where... But to Justice Hyman's earlier point, he did take that in consideration by making it concurrent as opposed to consecutive. Isn't that correct? Yes, Your Honor, absolutely he did. But then in order to make Mr. Smith's rehabilitation a goal of the sentence, as our constitution requires, the judge was not required to ignore whether the prison term was necessary. In a case like this, where the person's sentence takes him several years past the average life expectancy, and it's therefore a de facto sense of natural life, there's not much difference between the sentence he got and the sentence that, you know, the consecutive sentence. The question here is whether the sentence reflects that the judge failed to consider Mr. Smith's rehabilitation as a goal of the sentence. And if this court finds that it's at least arguably true that the judge failed to do that, that's sufficient to warrant second stage proceedings. Well, when Mr. Smith filed this pro se post-conviction petition, he thought that he was sentenced to 125 years. So I'm sure he was quite elated when the judge explained to him that this was really only 50 years. And when you think about it, while you may be correct that, because as you've stated correctly, that the life expectancy is about 65 years, it still comes back to, if you think about this sentence, at the 85%, you're talking about 42.5 years to be exact. So it actually takes him, and he was 29 going in and probably did some time prior to going to trial, so he probably had anywhere from three to five years already done in the sentence. So we're still talking about, I guess we're still talking about a release date of about 71 years old. That's what your concern is, correct? Yeah, I believe the DOC currently reflects that he would be 69 years old at the time he's released a mandatory supervised release. Okay. All right. Thank you. So for those reasons, Your Honors, if there are no further questions, if this court finds that Mr. Smith's claim is arguably excessive, meaning that there's a reasonable probability this court would have granted some sentencing relief on direct appeal, then Mr. Smith has stated a claim of ineffective assistance of direct appeal counsel that warrants second stage proceedings, and this court should remand for those proceedings. Thank you very much. Thank you very much. Counsel for appellate. Again, Assistant State's Attorney, Lisa Ann Pugliese, appearing on behalf of the people. May it please the court. The trial court's dismissal of defendant's pro se post-conviction petition here was proper. Here, under Strickland, defendant has failed to arguably show that appellate counsel's performance was either deficient or that he suffered prejudice where the underlying issue of whether the trial court abused its discretion in sentencing him to the maximum sentence here is without merit, and there's no reasonable probability of success. As a result, and so as the underlying issue is, as was discussed, is whether or not this trial court abuses discretion in sentencing the defendant within the statutory guidelines after expressly indicating it balanced all of the factors. Is that really the issue, though, Ms. Pugliese, that we're looking to today? I don't think that's the issue that we're considering today. Well, we're considering, I think that we're considering whether appellate counsel was in effect. I'm sorry, I don't mean to interrupt. Go ahead. Well, the issue that we're considering today is whether or not his petition was patently frivolous and without merit and whether or not he has stated the gist of a constitutional claim. Isn't that the issue that we're looking to today? Oh, absolutely. But what I'm saying is the claim is ineffective assistance of appellate counsel. So to evaluate that, we need to get to the underlying issue, which was alleged that his sentence was excessive. And in evaluating that, you look at to abuse of discretion to determine whether on appeal under that standard he would have had merit or he would have had a reasonable probability of success. Well, given that he was given a sentence to the maximum sentence, and if counsel believes that this is someone who probably should have at least been considered for a slightly lower sentence that was not effectively a life sentence, that there may be a gist of a because that's really the question that he's not required to prove anything, as you well know, just he just needs to state a claim that's a constitutional claim that, you know, may be a successful claim. Well, correct. That's a low standard. Clearly, it's a low standard to have a gist, but there needs to be a gist of a claim. And here, it's just it's simply there's no merit to any argument that this court, based on the trial court's explicit findings here regarding the seriousness of this offense, this horrific offense of defendant terrorizing this family over a period of days, the court found this defendant dangerous. And the court also found several witnesses not credible, too, right? Well, this is an issue of reasonable doubt, and the court acknowledged this thing. Yeah, I understand. I understand. But it was such a horrible crime. And I don't the court didn't believe that some of those things that were alleged actually even occurred. That's why the court found witnesses not credible. Well, that's not all the witnesses. There were some witnesses and that reflected in his guilty and not guilty findings. But overall, this court determined that Tasha, the victim of the aggravated kidnapping, was credible and that this happened and that she was battered and burned and branded with a heated hanger, stripped naked, tied up, and then threatened and then went. We know it's a heinous crime. That's great. Castle argued that this was different. Four days. It was 29 years. He has no violent history. And that counts for a lot, not having a violent history. He considered, you know, the judge considered him dangerous. But the question before us, it's a very low bar, as you just conceded. And the fact that the judge rehabilitative potential, it seems the judge gave short shrift to that, considering this man's full life story. Yeah, I understand your concern. And I would disagree that the court didn't give thoughtful consideration to the rehabilitative potential. The court not only concerned with the seriousness of the offense, but the court found just whether it was violent or not, even if it wasn't violent history, he had a significant history. He had three felonies and he had three prior misdemeanors. And yet he was then, you know, convicted of this current crime. And the court went over his upbringing and determined he agreed. He did not have a great upbringing. So he considered all that mitigation. And so really, those felonies were nonviolent. Is that correct? Two of them were for, was it for marijuana? There were some drug cases. There's some drug cases as well as domestic battery and resisting arrest police officer. But and we're getting back to, you know, to the age and how long he will be in prison. Defendant cites no case saying that under these circumstances, a trial court may not sentence an adult offender to a sentence that will potentially cause them to be in prison past the age that we've mentioned, approximately 64 or whatever that age may be. There's nothing prohibiting this court under these circumstances and evaluating this to do that. And defendant is simply on this record and based on these findings of this court, simply cannot show you abuse of discretion, but instead is asking this court to reweigh it, which as Justice Simons indicated, that's just not the role of the reviewing court at this point. Therefore, where the underlying claim is not meritorious, he's failed to show prejudice. He failed to show that appellate counsel was deficient for not raising this non-meritorious claim. And we'd ask that this court affirm the trial court's dismissal. For those reasons and those in our brief, we'd ask this court to affirm. Any additional questions? No. Okay. Attorney Lentz. Yes. Thank you, Your Honor. I would just reiterate that, as Your Honor's pointed out, that the question is not whether the judge abused his discretion or that counsel on direct appeal was ineffective under a full strict analysis. The question here is whether it's at least arguable that those errors occurred. And if this court agrees that there's a reasonable probability that relief would have been granted, then further proceedings are warranted. But I think counsel is saying that the claims are meritless, are based on, I think the cases say, indisputably meritless legal theory. So how do you address that, counsel? Well, it's simply not indisputably meritless where the record shows that while we all agree that the conduct at issue is very serious and that he had prior convictions, the record also shows significant mitigation with his extremely difficult childhood, the fact that he was arrested, and the fact that while he had priors, the state showed no evidence that he had any history of violence and certainly none of the kind of violence we see for which he was convicted. Well, there was domestic battery. That's violent and consistent with what he was charged with here. He was convicted of misdemeanor domestic battery. The state did not present the facts of that case, however, and we know that domestic battery can include contact of merely insulting or provoking nature. So it's not an inherently violent offense, and the state didn't show that that particular act was violent. So we have to go on the record that's in front of the court, and that record fails to show that he has a history of violence, and again, certainly not the kind of violence we see here. And I would, again, emphasize to the court that what the record appears to indicate, at least arguably, is that this four-day period was an aberration in this man's life and should not warrant a finding that as a matter of law, his de facto sentence of natural life should be affirmed. The question is whether it's arguable that it was excessive, and if this court finds any reasonable probability that it is, further proceedings are warranted. What about your response to counsel's argument that there's no case similar to this? Well, I would point the court to two cases. You know, the Seventh Circuit certainly feels that this is a factor that should be considered, and we cited the Wersinger case for that, where the Seventh Circuit admonished trial courts to consider the survivability of a prison term and and said the survivability is a factor that, when a sentence is unsurvivable, it may show that the judge was failing to consider all the factors properly. And then in this court's decision in Hardy, under fairly similar facts, a young man, very difficult childhood, got, I believe, 50 years as well in that case, or at least something over 40 years, and this court found that where the judge never found that Mr. Hardy was utterly irredeemable like the judge here, a lesser sentence was warranted, and that was on a direct appeal claim of excessive sentence. So under Hardy, I think Mr. Smith at least has an arguable claim his sentence was excessive, and that's why it should go back for second stage. Okay. Counsel, I understand your argument, and you are making the case very eloquently. However, show me where in this pro se petition I find a, the arguable claim, the gist of the claim. You know, I know it doesn't have to succinctly state the claim, but, you know, frankly, we have to take a little bit from here, a little bit from this document, and then this attachment, etc. So walk me through where he makes the gist of the claim. Well, there's no question Mr. Smith filed. I would hesitate to call them multiple documents because all these documents were filed at the same time. It's kind of an agglomeration of he clearly realized that he needed to raise appellate counsel's ineffectiveness for the claims that were based on the trial record, and that, so in his, and I also point, emphasize to the court that essentially his pleadings are, consist of a typed filing, which I believe is essentially his post-trial motion, which he calls his post-conviction petition, and then a series of handwritten pleadings where he includes his other claims, he calls his amended petition, but since they're filed at the same time, it's really just one petition, and in those handwritten pleadings, he has a claim that his sentence was excessive, so that's the underlying claim on the merits, and then later at the end of those handwritten pleadings, he says appellate counsel on direct appeal was ineffective for failing to raise these claims for a potentially meritorious claim, and I think the only reasonable reading under the that applies to any of the above pleadings that are based solely on the trial record, which, as we all know, an excessive sentence claim is, so I think a liberal construction requires the court to find that this claim was sufficiently pled, and I think this falls on the line, there is a division in the case law here, and I think this case falls on the line of, with Thomas and Frank Williams, where the underlying claim was presented in the pleadings, unlike I think the state's cases, it was the underlying claim that was missing, and then a general claim of ineffective assistance of direct appeal counsel for not raising the claims above, so just like Thomas and Frank Williams, I think that's what we have here. Thank you. Any additional questions from the panel? Thank you very much. We will take your arguments under advisement. Thank you. Thanks.